IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HELSINN HEALTHCARE S.A. and ROCHE PALO ALTO LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 13-688-GMS CONSOLIDATED |
| AUROBINDO PHARMA LTD. and AUROMEDICS PHARMA LLC, | ) ) ) | REDACTED - PUBLIC VERSION |
| Defendants. | ) ) | |
| HELSINN HEALTHCARE S.A. and ROCHE PALO ALTO LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 13-1612-GMS |
| BEN VENUE LABORATORIES, INC. d/b/a BEDFORD LABORATORIES | ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

OF COUNSEL:

Joseph M. O'Malley, Jr.
Bruce M. Wexler
Eric W. Dittmann
David M. Conca
Gary Ji
Angela C. Ni
PAUL HASTINGS LLP
75 East 55th Street
New York, NY 10022
(212) 318-6000

*Attorneys for Plaintiff Helsinn Healthcare S.A.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

Mark E. Waddell
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
(212) 407-4127

*Attorneys for Plaintiff Roche Palo Alto LLC*

July 8, 2014 - Original Filing Date
July 15, 2014 - Redacted Filing Date

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.  BEN VENUE AGREES THAT THE COURT MAY ADOPT A PLAIN-MEANING CONSTRUCTION OF "PHARMACEUTICALLY STABLE"...................2

II.  BEN VENUE FAILS TO SUPPORT ITS INDEFINITE CONSTRUCTION .................3

III.  THE SPECIFICATION SUPPORTS  PLAINTIFFS' PROPOSED CONSTRUCTION ...........................................................................................5

IV.  THE PROSECUTION HISTORY CONFIRMS PLAINTIFFS' PROPOSED CONSTRUCTION ...........................................................................................9

    A.  The Transient Claim Language Focused upon by Ben Venue Does Not Support a Clear and Unmistakable Surrender.........................10

    B.  The Prosecution History Associates "Pharmaceutically Stable" with "Shelf Stability" and "Prolonged Storage" ...................................................12

V.  BEN VENUE'S EXTRINSIC EVIDENCE  SUPPORTS PLAINTIFFS' PROPOSED CONSTRUCTION.................................................................................14

CONCLUSION.....................................................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*3M Innovative Props. Co. v. Louis M. Gerson Co.*,
  No. 08-4960, 2010 WL 4106712 (D. Minn. Oct. 12, 2010)....................................................2

*Chamberlain Group, Inc. v. Lear Corp.*,
  516 F.3d 1331 (Fed. Cir. 2008)........................................................................................14

*Edwards Lifesciences LLC v. Cook Inc.*,
  582 F.3d 1322 (Fed. Cir. 2009)..........................................................................................7

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011)......................................................................................7, 8

*Finjan Software, Ltd. v. Secure Computing Corp.*,
  No. 06-369, 2007 U.S. Dist. LEXIS 100215 (D. Del. Dec. 11, 2007)....................................2

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*,
  349 F.3d 1373 (Fed. Cir. 2003)..........................................................................................5

*Halliburton Energy Servs., Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008)..........................................................................................5

*Laryngeal Mask Co. v. Ambu A/S*,
  618 F.3d 1367 (Fed. Cir. 2010)........................................................................................12

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004)..........................................................................................12

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
  244 F.3d 1365 (Fed. Cir. 2001)..........................................................................................2

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014) ......................................................................................................4

*Netcraft Corp. v. eBay, Inc.*,
  549 F.3d 1394 (Fed. Cir. 2008)..........................................................................................7

*O2 Micro Int'l v. Beyond Innovation Tech. Co, Ltd.*,
  521 F.3d 1351 (Fed. Cir. 2008)..........................................................................................3

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003)......................................................................................9, 14

*Osram GmbH v. ITC*,
  505 F.3d 1351 (Fed. Cir. 2007)..........................................................................................9

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................. 1, 6, 10

*Praxair, Inc. v. ATMI, Inc.*,
  543 F.3d 1306 (Fed. Cir. 2008) ............................................................................................7

*Schindler Elevator Corp. v. Otis Elevator Co.*,
  593 F.3d 1275 (Fed. Cir. 2010) ...........................................................................................9

*Sciele Pharma Inc. v. Lupin Ltd.*,
  No. 09-0037, 2011 WL 4351672 (D. Del. Sept. 15, 2011) ...................................................3

*Thorner v. Sony Computer Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ...........................................................................................9

*Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*,
  473 F.3d 1173 (Fed. Cir. 2006) .........................................................................................11

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
  200 F.3d 795 (Fed. Cir. 1999) .............................................................................................3

*In re Vogel*,
  422 F.2d 438 (C.C.P.A. 1970) ...........................................................................................11

## INTRODUCTION

Plaintiffs Helsinn Healthcare S.A. and Roche Palo Alto LLC (collectively, "Plaintiffs") and Defendant Ben Venue Laboratories, Inc. d/b/a Bedford Laboratories ("Ben Venue") agree that the patents-in-suit support a "plain meaning" definition of "pharmaceutically stable" — the only claim term that the parties have asked this Court to construe.  Accordingly, the Court need only rule that the definition of "pharmaceutically stable" is "plain meaning."  Indeed, Ben Venue has not argued that its formulation does not meet the limitation "pharmaceutically stable," or otherwise explained why this claim term would benefit from further construction by the Court.

If the Court were inclined to construe that claim term, however, it should adopt Plaintiffs' proposed construction (*i.e.*, "shelf stable for periods greater than 24 months at room temperature") because it is "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc).  As discussed in Plaintiffs' opening brief, the patentees sought to develop a palonosetron formulation that would overcome a problem (known only to the inventors based upon their confidential research) associated with prior-art palonosetron formulations — unacceptable shelf stability.  ('724 patent, at col. 1:54-2:3.)  Through optimal combinations of palonosetron amounts, excipients, and/or processing steps, the patentees were able to develop "pharmaceutically stable" formulations.  Specifically, as the "SUMMARY OF THE INVENTION" provides, "[t]hese formulations are shelf stable for periods greater than 24 months at room temperature."  (*Id.* at col. 2:59-60.)

Aside from failing to construe the actual term at issue, "pharmaceutically stable" (as opposed to "stable"), Ben Venue's proposed construction, "without significant change in chemical and physical integrity for pharmaceutical use," would render the claim limitation

indefinite and, effectively, meaningless.  Indeed, without providing any temporal or storage guidelines, it is difficult to conceive of any palonosetron formulation that would be excluded by the claim limitation, including ***the very prior-art palonosetron formulations distinguished in the specification and prosecution history***.  Aware of the flaws in its proposed construction, Ben Venue spends almost its entire opening brief nitpicking Plaintiffs' proposed construction, instead of demonstrating why its proposed construction should be adopted.

For all these reasons and the reasons set forth below, the Court should adopt "plain meaning" as the definition of the "pharmaceutically stable" limitation.  Alternatively, if the Court determines that a further definition is warranted, the Court should adopt Plaintiffs' definition of "shelf stable for periods greater than 24 months at room temperature."  Ben Venue's proposed construction, which is indefinite, vague, and divorced from how the term "pharmaceutically stable" is used in the patents-in-suit, should be rejected.

## ARGUMENT

## I.   BEN VENUE AGREES THAT THE COURT MAY ADOPT A PLAIN-MEANING CONSTRUCTION OF "PHARMACEUTICALLY STABLE"

Ben Venue urges the Court to "give the disputed term [its] plain and ordinary meaning." (D.I. 47 at 2.)  Although the parties disagree on what that "plain and ordinary meaning" is, Plaintiffs respectfully request that the Court adopt "plain meaning" as the definition of "pharmaceutically stable."  Such a construction has been employed by numerous courts in patent cases when appropriate, including this Court.  *See, e.g.*, *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001); *3M Innovative Props. Co. v. Louis M. Gerson Co.*, No. 08-4960, 2010 WL 4106712, at *14 (D. Minn. Oct. 12, 2010); *Finjan Software, Ltd. v. Secure Computing Corp.*, No. 06-369, 2007 U.S. Dist. LEXIS 100215, at *3, 5-8 (D. Del. Dec. 11, 2007) (construing various claim terms "to have [their] plain and ordinary meaning").

This approach is particularly appropriate here, where Ben Venue has not explained how construing the limitation "pharmaceutically stable" would be useful to any claim or defense. *See, e.g.*, *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."); *O2 Micro Int'l v. Beyond Innovation Tech. Co, Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("Claim construction is a matter of resolution of disputed meanings … for use in the determination of infringement."); *Sciele Pharma Inc. v. Lupin Ltd.*, No. 09-0037, 2011 WL 4351672, *10 (D. Del. Sept. 15, 2011) (not construing terms that were "immaterial to determining infringement"). Even if the "plain meaning" does become relevant to an issue in this action, the parties' disagreement can be resolved through expert discovery.[1]

## II.    BEN VENUE FAILS TO SUPPORT ITS INDEFINITE CONSTRUCTION

Virtually all of Ben Venue's opening brief is centered on why the Court should not adopt Plaintiffs' proposed construction of "pharmaceutically stable."  Regarding its own proposed construction, Ben Venue devotes approximately one half of a page and a footnote.  (D.I. 47 at 7.)  In construing "pharmaceutically stable," Ben Venue simply states, in conclusory fashion, that its proposed construction "reflects a common sense understanding of the term in question."  (*Id.*)  Ben Venue's proposed construction is not the ordinary meaning.  The only evidence Ben Venue cites are two definitions of the term "stability" (but not of "pharmaceutical stability") from extrinsic sources that, as explained in Section V below, actually support Plaintiffs' proposed

---

[1] As noted in Plaintiffs' Opening Claim Construction Brief (D.I. 49 at 8), the other defendant in this consolidated action, Aurobindo, does not seek to construe "pharmaceutically stable" at all, further confirming that claim construction is unnecessary.  Moreover, Plaintiffs also assert in this action U.S. Patent No. 8,598,219, which contains related formulation claims expressly including Plaintiffs' "shelf stable for periods greater than 24 months at room temperature" definition in place of the term "pharmaceutically stable."

definition. (*Id.* at 7 n.9.) Ben Venue also does not identify any portion of the specification that supports its proposed construction.

Ben Venue's reluctance to do so is justified. As discussed throughout Plaintiffs' opening brief and below, the specification repeatedly confirms that the "pharmaceutically stable" limitation means "shelf stable for periods greater than 24 months at room temperature." For example, according to the specification, the prior-art palonosetron formulations disclosed in Example 13 of U.S. Patent No. 5,202,333 ("the '333 patent") "ha[ve] a pH of 3.7 and a shelf stability of *less than the 1-2 year time period required by health authorities in various countries*. . . ." ('724 patent, at col. 2:1-3 (emphasis added).) These prior-art palonosetron formulations of the '333 patent also did not compare favorably with antiemetics that were available at the time the application leading to the patents-in-suit was filed, all of which had shelf stabilities of more than two years. (D.I. 49 at 5 n.7.) Thus, in the "SUMMARY OF THE INVENTION," the patentees explicitly described their "pharmaceutically stable" invention as follows: "*These formulations are shelf stable for periods greater than 24 months at room temperature* . . . ." ('724 patent, at col. 2:59-60 (emphasis added).)

As discussed in Plaintiffs' opening brief (D.I. 49 at 12-13), Ben Venue's proposed construction should also be rejected because, without any temporal or storage guidelines, it would render the limitation hopelessly vague and impermissibly indefinite. *See Nautilus, Inc. v. Biosig Instruments., Inc.*, 134 S. Ct. 2120, 2129 (2014) (prohibiting claim scope that would create "'[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims'") (citation omitted). For example, without any temporal guidelines, prior-art palonosetron formulations could be considered "pharmaceutically stable" — a result expressly prohibited by both the specification and prosecution history. (D.I. 47 at 12.) Indeed,

the patentees distinguished palonosetron formulations disclosed in the '333 patent during prosecution of the patents-in-suit on the grounds that the '333 patent does not disclose a "pharmaceutically stable" formulation.  (D.I. 48-13, 4/6/09 Amendment and Response to Office Action, at 8 ("[T]he formulations of the present invention are pharmaceutically stable, when the formulations described in the Berger '333 patent most likely *are not*.") (emphasis added).)

Moreover, as Plaintiffs explained in their opening brief (D.I. 49 at 12-13), under Ben Venue's proposed construction, the exact same palonosetron formulation could be both "pharmaceutically stable" and not "pharmaceutically stable" depending upon (1) when Ben Venue's vague "without significant change" standard is applied and (2) the storage conditions of those formulations.  Indeed, Ben Venue admits that its definition "refers to a composition that maintains chemical and physical integrity to a degree sufficient for it to be used for its intended pharmaceutical use, *whatever that might be*."  (D.I. 47 at 7.)  Such a construction is improper. *See, e.g.*, *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003) ("By GSK's proposed construction, a formulation . . . *might infringe or not depending on its usage in changing circumstances*. . . .  That is the epitome of indefiniteness.") (emphasis added); *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) ("When a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the composition may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite.").

## III.    THE SPECIFICATION SUPPORTS PLAINTIFFS' PROPOSED CONSTRUCTION

Ben Venue's proposed construction should be rejected for the additional reason that it reduces the role of the specification to a mere check on a proposed dictionary meaning of part of

a disputed claim term — an approach rejected by the Federal Circuit.  *See Phillips*, 415 F.3d at 1320 ("[L]imit[ing] the role of the specification in claim construction to serving as a check on the dictionary meaning of a claim term . . . improperly restricts the role of the specification in claim construction.") (internal citations omitted).  Specifically, in contesting Plaintiffs' proposed construction, Ben Venue argues that the specification does not "define" the term "pharmaceutically stable."  (D.I. 47 at 8.)  Ben Venue also argues that "[t]here is no suggestion in the patent specification that 'pharmaceutically stable' should be understood to mean 'shelf stable' for a certain amount of time."  (*Id.*)  These contentions, however, are meritless.

Contrary to Ben Venue's position, the specification does associate "pharmaceutical stability" with shelf stability.  For example, as discussed in Plaintiffs' opening brief, the specification uses shelf stability as a measure of "pharmaceutically stability" in explaining that "an object of ***the present invention*** [is] to provide a formulation of Palonosetron hydrochloride with increased ***pharmaceutical stability*** for preventing and/or reducing emesis," and further stating that this objective has been met through the discovery of "surprisingly effective and versatile formulation[s] for the treatment and prevention of emesis" that "are ***shelf stable for periods greater than 24 months at room temperature*** . . . ."[2]  ('724 patent, at col. 2:42-44, 57-61) (emphases added).)  The specification also associates "pharmaceutical stability" with shelf stability in stating that "there exists a need for a palonosetron formulation with increased stability ***and thereby increased shelf life***."  (*Id.* at col. 2:36-37 (emphasis added).)

---

[2] That disclosure describes a fundamental feature of ***the invention*** as a whole, not a "cherry-picked . . . preferred embodiment," as Ben Venue asserts.  (D.I. 47 at 10.)  Notably, the aforementioned disclosure is contained in the "SUMMARY OF THE INVENTION," and — unlike other disclosed features of the invention — the specification does not qualify it as "an embodiment."

Supporting Plaintiffs' proposed construction, the specification emphasizes shelf stability as a critical feature of "the present invention," which is incorporated in the claim term "pharmaceutical stability," for example, in: (1) the "ABSTRACT" of the invention; (2) the very first paragraph of the "BACKGROUND OF THE INVENTION"; and (3) again in the first paragraph of the "SUMMARY OF THE INVENTION." ('724 patent, at cover page, cols. 1:10-15, 2:56-62.) Such statements in the specification regarding a fundamental feature of the patentees' invention are important tools for claim construction, and have been found to provide the ordinary and customary meaning of claim terms. *See, e.g.*, *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1321, 1323 (Fed. Cir. 2011) (finding that descriptions of "the invention" in the specification, including in the "Summary of Invention section," "unequivocally compel[led] the constructions adopted by the district court"); *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1324 (Fed. Cir. 2008) ("The claims of the patent must be read in light of the specification's consistent emphasis on [a] fundamental feature of the invention."); *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1397-99 (Fed. Cir. 2008) (defining "ordinary meaning" of claim term based upon specification statements describing "the present invention").[3]

Ben Venue's argument that the claimed formulations need not be shelf stable for greater than 24 months since examples in the specification provide "stability data point[s]" in terms of "days" or even "hours" is meritless. (D.I. 47 at 11.) The tests that Ben Venue references (*i.e.*, Example 6 in the specification) were not directed generally to the "pharmaceutical stability" of any claimed formulation; they merely analyzed whether dexamethasone, a steroid that is

---

[3] Ben Venue seeks to attribute relevance to the fact that these statements concerning "the invention" are not contained in the portion of the specification titled "Definitions." (D.I. 47 at 4.) But "the location within the specification in which [a] definition appears is irrelevant." *See, e.g.*, *Edwards Lifesciences LLC v. Cook Inc*., 582 F.3d 1322, 1334 (Fed. Cir. 2009); *Netcraft*, 549 F.3d at 1397-99 (defining claim term based upon specification statements found in the Abstract and Summary of the Invention).

commonly given in conjunction with antiemetics, could affect the stability of a palonosetron formulation. ('724 patent, at col. 8:25-9:20.) Moreover, Ben Venue's argument that the specification's discussion of prior-art palonosetron formulations with "shelf-stability of less than the 1-2 year time period required by health authorities in various countries" somehow "suggests that one year of shelf stability may be appropriate in some contexts" is not only baseless, but actually supports Plaintiffs' proposed construction. (D.I. 47 at 11.)  A formulation that is shelf stable for only one year would not meet the standards of a health authority in a country requiring two years of shelf stability.  Thus, a person of ordinary skill in the art reviewing the specification would understand — consistent with the "SUMMARY OF THE INVENTION" ('724 patent, at col. 2:57-61) — that the cited portion means that the patentees sought to invent palonosetron formulations that would be shelf stable *for greater than two years* in order to meet the requirements of health authorities in *any* country that the patentees contemplated seeking approval.[4]  This further supports Plaintiffs' proposed definition.  *See, e.g.*, *Eon-Net*, 653 F.3d at 1321 (construing claims based upon "limitations" of the cited prior art discussed in the "Background of the Invention section" and description of "the invention" from, *inter alia*, the "Summary of Invention section" that overcame these limitations).

---

[4] Similarly, Ben Venue's reference to "the storage 'method' outlined in the patent specification" not only fails to contravene Plaintiffs' proposed construction, but confirms it. (D.I. 47 at 11.) The specification notes that certain palonosetron solutions could be stored in containers for various amounts of time. ('724 patent, at col. 6:39-40.) While the specification did not specify the shelf stability of those embodiments, it must be greater than 24 months in order to meet the disclosed storage criteria:  "storing said containers in said room for one month, 3 months, 6 months, one year, 18 months, 24 months *or more* (but preferably not exceeding 36 months)." (*Id.* (emphasis added).)  Nor does claim 8 of the '219 patent contradict Plaintiffs' proposed construction. (D.I. 47 at 11-12 n.10.)  A palonosetron formulation that is "pharmaceutically stable," *i.e.*, "shelf stable for periods greater than 24 months at room temperature," will also necessarily be "stable at 18 months when stored at room temperature," as required by claim 8 of the '219 patent.

As demonstrated above, Ben Venue ignores the central, repeated teaching of the specification and instead parses (and excerpts) it to argue that "shelf stable" and "pharmaceutical stability" are mutually exclusive concepts. (D.I. 47 at 8-11.) The teachings of the specification as a whole, however, as discussed in Plaintiffs' opening brief and above, support the opposite conclusion. (*See, e.g.*, '724 patent, at col. 2:36-37 ("Therefore, there exists a need for a palonosetron formulation with increased stability **and thereby increased shelf life**.") (emphasis added).) Ben Venue should not be permitted to exclude this essential property of the claimed formulations by proffering an unhelpful claim construction derived from selected portions of extrinsic sources. *See Osram GmbH v. ITC*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (holding that a construction that is "at odds with the purpose of the invention" is erroneous).

## IV.  THE PROSECUTION HISTORY CONFIRMS PLAINTIFFS' PROPOSED CONSTRUCTION

As discussed above, the specification demonstrates that patentees used the limitation "pharmaceutically stable" to mean "shelf stable for periods greater than 24 months at room temperature." Nothing in the prosecution history reflects the "clear and unmistakable" surrender of claim scope required to depart from this plain-meaning construction. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012); *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003). Tellingly, Ben Venue does not acknowledge the "clear and unmistakable surrender" standard in its opening brief, let alone establish it by the out-of-context prosecution events it cites.

In fact, if anything, the prosecution history shows that the patentees consistently relied on that feature to distinguish the claimed formulations over the prior art '333 patent, and equated the

"pharmaceutically stable" term with the same prolonged shelf life discussed in the specification — *i.e.*, "shelf stable for greater than 24 months at room temperature."

### A.   The Transient Claim Language Focused upon by Ben Venue Does Not Support a Clear and Unmistakable Surrender

Contrary to Ben Venue's assertions (D.I. 47 at 12-14), none of the claim amendments made during prosecution constitutes the "clear and unmistakable" surrender necessary to rebut Plaintiffs' proposed construction.  For example, Ben Venue argues that, because certain claims were amended in a February 26, 2007 Amendment and Response by temporarily adding the limitation "shelf stability of twelve months or more when stored at greater than about ten degrees" to pending claims that already contained the term "pharmaceutically stable," the terms "shelf stability" and "pharmaceutical stability" must have different meanings.  (D.I. 47 at 12.) Ben Venue's argument is a red herring; Plaintiffs do not contend that those two terms have the same meaning.  Plaintiffs have consistently maintained that "shelf stability" is a measure of "pharmaceutical stability," as those terms are used in the patents-in-suit.  That the scope of a claim could be altered by adding a different shelf-stability requirement (*i.e.*, "shelf stability of twelve months or more ***when stored at greater than about ten degrees***") than that required by the "pharmaceutically stable" claim term (*i.e.*, "shelf stable for periods greater than 24 months ***at room temperature***") simply does not conflict with Plaintiffs' proposed construction of the latter claim term.

In alleging that Plaintiffs are somehow trying "to regain through claim construction what they gave up during prosecution" (D.I. 47 at 12), Ben Venue ignores the context of the "ongoing negotiation between the PTO and the applicant[s]," *Phillips*, 415 F.3d at 1317, and fails to recognize the reasons for the applicants' various submissions.  The February 26, 2007 Amendment and Response relied upon by Ben Venue was made to overcome a "***statutory double***

*patenting*" rejection under 35 U.S.C. § 101, which prevents two patents that are commonly owned from containing claims that cover *identical* subject matter.  *In re Vogel*, 422 F.2d 438, 441 (C.C.P.A. 1970).  To overcome a statutory double patenting rejection, an applicant need only amend the rejected claim such that its scope is different — in any way, broader or narrower — from the other claim forming the basis for the rejection.  MPEP § 804.02 (8th ed. Rev. 5, Aug. 2006).  Here, the applicants amended these claims so they would "no longer [be] coextensive in scope" with the other claims — *i.e.*, they added to their "pharmaceutically stable" claims another, *different* shelf-stability requirement of "twelve months or more when stored at greater than about ten degrees" — in an attempt to overcome such a rejection.  (D.I. 48-10, 2/26/07 Amendment and Response to Office Action, at 11-12.)  In other words, this claim language, at most, indicates what "pharmaceutically stable" is not (*i.e.*, it is not shelf stability for "twelve months or more when stored at greater than about ten degrees").  Such a transient claim amendment that did not affect the "pharmaceutically stable" claim language that has always been present in the claims cannot be used to alter the ordinary and customary meaning of that language.[5]  *See Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1182-83 (Fed. Cir. 2006) (holding that an "allegedly disclaiming statement[]" concerning "different claim language" "does not apply" to the claim language at issue).[6]

---

[5] For the same reason, Ben Venue's reliance on the temporary presence of claim language requiring "shelf stability of from twelve months to two years when stored at ten to twenty degrees Celsius" does not contravene Plaintiffs' proposed construction.  (D.I. 47 at 13.)  Ben Venue also attributes significance to a January 23, 2009 Advisory Action, but the application being discussed in that document did not contain any claims directed to "a method of prolonging stability through storage," which is why the Examiner stated during prosecution of that application that the then-pending claims "are not directed to *storing* the drug for 2 years prior to use."  (*Id.* at 14 (emphasis added).)

[6] The cases cited by Ben Venue to argue that Plaintiffs are somehow trying to "reintroduce" limitations that were removed during prosecution are also inapplicable.  (D.I. 47 at 12-13.)  In *Laryngeal Mask* and *Liebel-Flarsheim*, the very construction later advocated in litigation

**B.     The Prosecution History Associates "Pharmaceutically
        Stable" with "Shelf Stability" and "Prolonged Storage"**

The prosecution history documents that postdate the transient amendments focused upon

by Ben Venue confirm that Plaintiffs' definition of "pharmaceutically stable" is the ordinary and

customary meaning of that claim term.  In fact, in the very prosecution document where the

temporary claim language focused on by Ben Venue was deleted, the applicants explained that,

"[a]s can be seen, the formulations of the present invention *are pharmaceutically stable*, when

the formulations described in the Berger '333 patent most likely *are not*."  (D.I. 48-13, April 6,

2009 Amendment and Response to Office Action, at 8 (emphasis added).)  In support of its

representation, the applicants pointed out in "Table 5" that these prior-art formulations did *not*

have a "*1-2 year stability*."  (*Id*. (emphasis added).)  Thus, contrary to Ben Venue's argument

that the applicants "argued that the claims were patentable on . . . grounds" other than prolonged

"shelf stability" (D.I. 47 at 5), the applicants expressly distinguished the prior art for this precise

reason.

Similarly, a declaration submitted by certain of the named inventors expressly states that

"pharmaceutically stable" formulations are those that "can be *stored for prolonged periods of*

---

included the *exact same* language removed by a claim amendment.  For example, in *Laryngeal
Mask*, the Federal Circuit reversed a claim construction that required a "tube joint," which was
language that was explicitly removed from pending claims in prosecution.  *Laryngeal Mask Co.
v. Ambu A/S*, 618 F.3d 1367, 1372-73 (Fed. Cir. 2010) ("[D]efendant's insist[e]nce upon this
court's reading back into the claims limitations which were originally there and were removed
during prosecution of the application through the Patent Office cannot be permitted.") (internal
citation omitted.).  Similarly, in *Liebel-Flarsheim*, the Federal Circuit reversed a claim
construction that required a "pressure jacket," where the applicants "*clearly* stated" that there is
not "necessarily a pressure jacket" because only certain claims required this structure.  *Liebel-
Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 909 (Fed. Cir. 2004).  The claim limitation in
dispute, "pharmaceutically stable," however, was not removed from pending claims during
prosecution and there is no dispute that Plaintiffs' proposed construction of "pharmaceutically
stable" is different in scope from the subject matter that Ben Venue contends was removed
during prosecution (*e.g.*, shelf-stability requirement of "twelve months or more when stored at
greater than about ten degrees").

*time* in a variety of conditions," which would include periods greater than 24 months at room temperature.  (D.I. 48-18, 11/21/07 Statutory Decl. of G. Calderari, D. Bonadeo, R. Cannella, E. Braglia, and R. Braglia, at ¶ 6 (emphasis added).)  Notably, Ben Venue concedes that the "shelf stable for periods greater than 24 months at room temperature" specification language discussed above (*see* Section III, *supra*) at least describes the "prolonged storage" embodiment of the invention.  (D.I. 47 at 10.)  Thus, the use of the same word "prolonged" to describe "pharmaceutically stable" formulations in the inventors' declaration further confirms Plaintiffs' plain-meaning definition.

Ben Venue also relies upon the February 9, 2009 Bonadeo Declaration to argue that the stability of various palonosetron formulations was being measured in a manner that is allegedly consistent with its proposed construction of "pharmaceutically stable."  (*Id.* at 15 (relying upon "% palonosetron HCl remaining" and "% [d]egradation" measurements).)  That declaration, however, focused on explaining the unexpected impact of varying the concentration of palonosetron, changes in pH, and the addition of different excipients on the comparative stability of different possible developmental formulations, rather than specifically addressing the "pharmaceutical stability" of the claimed invention as a whole.  (D.I. 48-20.)[7]

_____

[7] To the extent that Ben Venue relies upon reported testing durations that were shorter than 24 months (*e.g.*, up to 270 days in Table 2 of the February 9, 2009 Bonadeo Declaration) (D.I. 47 at 15), they relate to "accelerated" stability studies conducted under conditions that are more strenuous than would normally be encountered over a relatively short amount of time, which are routinely used in attempts to predict the "actual shelf-life" of a pharmaceutical product.  (D.I. 48-14, *Remington: The Science and Practice of Pharmacy* (20th ed. 2000), at 992 (discussing how "data from accelerated studies are used to project a tentative expiration date" or shelf life); *see also* ███████████████████████████████████████████

Notably, when the declaration does compare the present invention and the prior art, it references the same Table 5 set forth in the April 6, 2009 Amendment discussed above, and once again distinguishes the prior art as not having "1-2 year" shelf stability.  (*Id.* at 7.)  Accordingly, to the extent the declaration is used for the purpose of informing the construction of "pharmaceutically stable," it further confirms patentees' consistent distinction of their invention over prior-art formulations on the basis of shelf stability.

In sum, Ben Venue has failed to demonstrate that the prosecution history contains any "clear and unequivocal disavowal of claim scope" required to depart from the ordinary and customary meaning of "pharmaceutically stable" that is provided by the specification.  On the contrary, the prosecution history, as a whole, is consistent with the specification of the patents-in-suit and supports Plaintiffs' proposed construction.  At the very least, the prosecution history is ambiguous and thus cannot support deviating from the ordinary and customary meaning.  *See Omega Eng'g*, 334 F.3d at 1325.

## V.   BEN VENUE'S EXTRINSIC EVIDENCE SUPPORTS PLAINTIFFS' PROPOSED CONSTRUCTION

Although Ben Venue claims that "it is not necessary in this case to refer to extrinsic evidence" (D.I. 47 at 7), the only cited support for its proposed construction are definitions plucked from extrinsic evidence, cited in a footnote, and divorced from the explicit disclosure provided by the specification.  *See, e.g., Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1337, 1339 (Fed. Cir. 2008) (rejecting the district court's interpretation of claim term based, in part, on an extrinsic source as "internally inconsistent and contradictory" to the specification).  Further, as explained above and in Plaintiffs' opening brief (D.I. 49 at 11), the term "stable" in isolation is not the claim term at issue; the claim term to be construed is "pharmaceutically stable."  Ben Venue's extrinsic evidence-based definition should be rejected because it ignores

the *raison d'être* of the patent, is impermissibly indefinite, and would raise new legal issues rather than resolve them.  (*See* D.I. 49 at 11-13.)

Notwithstanding, even Ben Venue's dictionary definitions of "stable" (and not "pharmaceutically stable") are consistent with Plaintiffs' proposed construction.  For example, Ben Venue's *Remington* reference defines "stability" as "the time from the date of manufacture until" a certain "predetermined level" of maximum allowed change occurs.  (D.I. 48-14 at 986.) This is consistent with Plaintiffs' proposed construction, which requires the formulation to be shelf stable for a period greater than 24 months at room temperature.  Ben Venue's *Pharmacopeia* reference, likewise, draws the same link between "stability" and "shelf life." (D.I. 48-15, *The United States Pharmacopeia* (2002), at 2213 (defining "stability" in terms of the "shelf life of the dosage form")).)

Further, to the extent that extrinsic evidence is considered, Plaintiffs' construction is also supported by the testimony of defendants' experts in *Helsinn Healthcare S.A., et. al. v. Dr. Reddy's Laboratories, Ltd., et. al.*, Civil Action No. 11-3962 (DNJ) ("the New Jersey Action"). As explained in Plaintiffs' opening brief, (D.I. 49 n.9), in the New Jersey Action, defendants sought to construe the same claim term at issue in this case, and proposed the very same construction (based on the same extrinsic references) proposed by Ben Venue.  Nevertheless, defendants' experts in that action, Dr. Bertram Spilker and Dr. Patrick DeLuca, both provided testimony that strongly supports Plaintiffs' construction in this action:

> Q.    [D]o you have an opinion as to what the definition of 'pharmaceutically stable' is in connection with the patents-in-suit in considering the factors that you just mentioned?
>
> A.    It's my opinion that the definition that [Plaintiffs] used of having at least 24 months' stability at room temperature was very reasonable.

(*See, e.g.*, Ex. 8, 1/16/14 Spilker Dep. Tr. at 52:19-53:1; 51:17-52:18 (equating "pharmaceutically stable" with sufficient "shelf life")[8]; Ex. 9, 1/23/14 DeLuca Dep. Tr. at 91:13-92:3 (stating that "pharmaceutically stable" means that "it's got to be stable … during the shelf life of the product.").)

---

[8] "Exs. 7-9" refer to the exhibits attached to the July 8, 2014 Declaration of Dana Weir, submitted herewith.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court adopt "plain meaning" as the definition of "pharmaceutically stable."  Alternatively, to the extent the Court believes that this language should be construed, it should adopt Plaintiffs' definition of "shelf stable for periods greater than 24 months at room temperature."

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Joseph M. O'Malley, Jr.
Bruce M. Wexler
Eric W. Dittmann
David M. Conca
Gary Ji
Angela C. Ni
PAUL HASTINGS LLP
75 East 55th Street
New York, NY 10022
(212) 318-6000

*Attorneys for Plaintiff Helsinn Healthcare S.A.*

Mark E. Waddell
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
(212) 407-4127

*Attorneys for Plaintiff Roche Palo Alto LLC*

July 8, 2014 - Original Filing Date
July 15, 2014 - Redacted Filing Date

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 15, 2014, upon the following in the manner indicated:

Mary B. Matterer, Esquire        *VIA ELECTRONIC MAIL*
Richard K. Herrmann, Esquire
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
*Attorneys for Defendants Aurobindo Pharma*
*Ltd. and Auromedics Pharma LLC*

H. Keeto Sabharwal, Esquire       *VIA ELECTRONIC MAIL*
Nirav N. Desai, Esquire
Brett E. Howard, Esquire
Paul A. Ainsworth, Esquire
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1100 New York Avenue
Washington, DC  20005
*Attorneys for Defendants Aurobindo Pharma*
*Ltd. and Auromedics Pharma LLC*

Karen E. Keller, Esquire        *VIA ELECTRONIC MAIL*
David M. Fry, Esquire
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE  19801
*Attorneys for Defendant Ben Venue*
*Laboratories, Inc. d/b/a Bedford Laboratories*

Robert V. Cerwinski, Esquire                                          *VIA ELECTRONIC MAIL*
Huiya Wu, Esquire
Michael S. Chang, Esquire
KENYON & KENYON LLP
One Broadway
New York, NY 10004
*Attorneys for Defendant Ben Venue*
*Laboratories, Inc. d/b/a Bedford Laboratories*

William G. James, Esquire                                            *VIA ELECTRONIC MAIL*
KENYON & KENYON LLP
1500 K Street, NW
Washington, DC 20005
*Attorneys for Defendant Ben Venue*
*Laboratories, Inc. d/b/a Bedford Laboratories*


                              */s/ Maryellen Noreika*
                              Maryellen Noreika (#3208)